## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MALLINCKRODT PLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br>Case No. 20-12522 (JTD) (Bankr. D. Del.)<br>(Jointly Administered) |
| MALLINCKRODT PLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CONNECTICUT, et al.,<br><br>Defendants. | Adv. Pr. No. 20-50850 (JTD) (Bankr. D. Del.)<br>Re: Adv. D.I. No. 180<br><br>C.A. No. 1:20-mc-00408-LPS |

**DEBTORS' OPPOSITION TO ACTHAR PLAINTIFFS' MOTION FOR LEAVE
TO APPEAL, ON EXPEDITED BASIS, FROM ORDER GRANTING
THE DEBTORS' SUPPLEMENTAL MOTION FOR
INJUNCTIVE RELIEF PURSUANT TO 11 U.S.C. § 105**

Dated: January 4, 2021

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:      collins@rlf.com
                  merchant@rlf.com
                  steele@rlf.com
                  schlauch@rlf.com

**LATHAM & WATKINS LLP**
George A. Davis (*pro hac vice*)
Christopher Harris (*pro hac vice*)
George Klidonas (*pro hac vice*)
Andrew Sorkin (*pro hac vice*)
Anupama Yerramalli (*pro hac vice*)
Hugh Murtagh (*pro hac vice*)
885 Third Avenue
New York, New York 10022
Telephone:      (212) 906-1200
Facsimile:      (212) 751-4864
Email:      george.davis@lw.com
                  christopher.harris@lw.com
                  george.klidonas@lw.com
                  andrew.sorkin@lw.com
                  anu.yerramalli@lw.com
                  hugh.murtagh@lw.com

---

[1] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt.  The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

- and -

Jeffrey E. Bjork (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:      (213) 485-1234
Facsimile:      (213) 891-8763
Email:          jeff.bjork@lw.com

- and -

Elizabeth Marks (*pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Telephone:      (617) 948-6000
Facsimile:      (617) 948-6001
Email:          betsy.marks@lw.com

- and -

Jason B. Gott (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:      (312) 876-7700
Facsimile:      (312) 993-9767
Email:          jason.gott@lw.com

*Counsel for the Debtors and Debtors in Possession*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..............................................................................................................2

    I.      The Debtors' Restructuring Effort ............................................................2

    II.     Injunctive Relief Protects the Debtors' Restructuring Effort ...................3

    III.    The Debtors Seek Injunction of the Covered Acthar Actions .................4

    IV.    The Bankruptcy Court's Bench Ruling......................................................7

ARGUMENT ...................................................................................................................10

    I.      The Acthar Plaintiffs Have No Appeal as of Right:  The Supplemental 105 Order is Not a Final Order .....................................................................10

          A.    The Supplemental 105 Order Does Not Affect the Distribution of the Assets of the Estate or the Relationship Among Creditors .................12

          B.    All Other Relevant Factors also Demonstrate that the Supplemental 105 Order is Not Final .....................................................................13

               1.    Remaining Work to be Done by Bankruptcy Court......................13
               2.    Legal Issues.................................................................................15
               3.    Need for Further Fact-Finding on Remand...................................17
               4.    Preclusive Effects........................................................................17
               5.    Judicial Economy.........................................................................18

    II.     Interlocutory Appeal of the Supplemental 105 Order is Not Appropriate............18

          A.    There Is No Controlling Question Of Law .................................................19

          B.    There are No Substantial Grounds for Difference of Opinion on any Controlling Question of Law .....................................................................20

          C.    An Immediate Appeal Will Not Materially Advance Termination of Litigation.....................................................................................................21

          D.    There Are No Exceptional Circumstances.................................................22

CONCLUSION................................................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Alcor Energy, LLC*,
No. AP 19-50097 (CSS), 2019 WL 6716420 (D. Del. Dec. 10, 2019) ...................................12

*In re Amer. Film Techs.*,
175 B.R. 847 (Bankr. D. Del. 1994) .........................................................................8, 10, 15

*In re Armstrong World Indus., Inc.*,
432 F.3d 507 (3d Cir. 2005).........................................................................................18

*Bailey v. Connolly*,
361 F. App'x 942 (10th Cir. 2010) ...............................................................................12

*Bowie Produce Co. v. Magic Am. Café, Inc. (In re Magic Rests., Inc.)*,
202 B.R. 24 (D. Del. 1996).........................................................................................23

*In re Brown*,
803 F.2d 120 (3d Cir. 1986)................................................................................11, 12, 13

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995)..................................................................................................18

*Century Glove, Inc. v. First Am. Bank of New York*,
860 F.2d 94 (3d Cir. 1988)................................................................................12, 13, 15

*City of Rockford v. Mallinckrodt ARD, Inc.*,
No. 17 C 50107, 2019 WL 2763181 (N.D. Ill. May 3, 2019) .................................................16

*In re Comer*,
716 F.2d 168 (3d Cir. 1983).........................................................................................11

*In re Del. & Hudson Ry. Co.*,
96 B.R. 469 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989) ...........................................19

*In re F-Squared Inv. Mgmt. LLC*,
2019 WL 1417464 (D. Del. Mar. 29, 2019) ....................................................................11

*Halperin v. Moreno (In re Greenfield Energy)*,
No. 15-50262, 2017 WL 6524525 (D. Del. Dec. 21, 2017) ..................................................21

*Kaiser Grp. Int'l, Inc. v. Ostrava (In re Kaiser Grp. Int'l, Inc.)*,
400 B.R. 140 (D. Del. 2009)....................................................................................18, 19

RLF1 24563192v.1

*Katz v. Carte Blanche Corp.*,
  496 F.2d 747 (3d Cir. 1974)...................................................................................19

*Lane v. Philadelphia Newspapers*,
  423 B.R. 98 (E.D. Pa. 2010) ..................................................................................9

*In re Lyondell Chem. Co.*,
  402 B.R. 571 (Bankr. S.D.N.Y. 2009) ...................................................................9

*In re Market Square Inn, Inc.*,
  978 F.2d 116 (3d Cir. 1992)..................................................................................12

*Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*,
  451 B.R. 343 (D. Del. 2011) .....................................................................18, 19, 21

*Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*,
  611 B.R. 532 (D. Del. 2019) .............................................................................19, 20

*McCartney v. Integra Nat'l Bank North*,
  106 F.3d 506 (3d Cir. 1997)....................................................................................8

*Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re Essar Steel Minn. LLC)*,
  607 B.R. 409 (D. Del. 2019) .........................................................................19, 21, 22

*In re Meyertech Corp.*,
  831 F.2d 410 (3d Cir. 1987).............................................................11, 12, 13, 17

*Pacor v. Higgins*,
  742 F.2d 984 (3d Cir. 1984).....................................................................................8

*In re Quigley Co., Inc.*,
  323 B.R. 70 (S.D.N.Y. 2005)................................................................................14

*In re Reliance Acceptance Grp., Inc.*,
  235 B.R. 548 (D. Del. 1999) ..................................................................................11

*In re Rood*,
  426 B.R. 538 (D. Md. 2010) ..................................................................................12

*Simon & Schuster, Inc. v. Advanced Mktg. Servs., Inc. (In re Advanced Mktg. Servs., Inc.)*,
  No. 07-28-JJF, 2008 WL 5680878 (D. Del. Apr. 3, 2008)....................................22

*In re Sudbury, Inc.*,
  140 B.R. 461 (Bankr. N.D. Oh. 1992) ...............................................................8, 15

*In re THG Holdings LLC*,
  No. 19-11689 (JTD), 2020 WL 1493622 (D. Del. Mar. 27, 2020).........................12

iii

*Trotter v. Perdue Farms, Inc.*,
    168 F. Supp. 2d 277 (D. Del. 2001)..................................................................19

*In re Univ. Med. Ctr.*,
    973 F.2d 1065 (3d Cir. 1992)........................................................................3

*In re W.R. Grace & Co.*,
    386 B.R. 17 (D. Del. 2008)......................................................................9, 15

*In re Woodside Grp., LLC*,
    No. CV 10-273-VBF, 2010 WL 11596159 (C.D. Cal. June 18, 2010) ...................................12

## STATUTES & RULES

11 U.S.C. § 101(5) ..............................................................................17

11 U.S.C. § 105 .............................................................................1, 3, 18

11 U.S.C. § 362 ...................................................................................3

11 U.S.C. § 502 ..................................................................................17

28 U.S.C. § 158 ....................................................................10, 11, 12, 18

28 U.S.C. § 1292 ..................................................................11, 12, 18, 19

Fed. R. Bankr. P. 7052 ...........................................................................14

Fed. R. Bankr. P. 8013 ............................................................................1

Fed. R. Civ. P. 52 .....................................................................1, 14, 15, 20

## OTHER AUTHORITIES

16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3926.1 ......................12

iv

Mallinckrodt plc and its affiliated debtors in possession in the above-captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, respectfully submit this opposition to the Acthar Plaintiffs' Motion For Leave To Appeal, On Expedited Basis, From Order Granting the Debtors' Supplemental Motion for Injunctive Relief Pursuant to 11 U.S.C. § 105 [D.I. 1] (the "Motion" or "Mot."). The Acthar Plaintiffs seek to appeal the Bankruptcy Court's Order dated December 4, 2020 [Adv. D.I. 180] ("Order" or "Supplemental 105 Order") and to expedite the appeal pursuant to Bankruptcy Rule 8013.[2]

## PRELIMINARY STATEMENT

The Court should decline the Acthar Plaintiffs' request for immediate review of the Supplemental 105 Order. The Order is not final, even under the pragmatic finality standards applicable to appeals from bankruptcy orders, and the Acthar Plaintiffs wholly fail to meet the standard for interlocutory appeal. Instead of attempting to meet the applicable standards, the Acthar Plaintiffs ground their motion almost entirely in the incorrect assertion that the Bankruptcy Court failed to make findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52. However, as expressly contemplated by Rule 52, the Bankruptcy Court set forth its findings of fact and conclusions of law in a bench ruling "on the record after the close of evidence." FRCP 52(a)(1). The bench ruling extends for over 10 transcript pages in addressing the Acthar Plaintiffs' objection alone; it clearly and completely addresses all legal and factual issues necessary to confirm the Bankruptcy Court's jurisdiction, the propriety of extending a stay to the affected non-debtors, and the Debtors' satisfaction of the traditional preliminary injunction factors. The

---

[2] "D.I." refers to the docket in this appeal. "Adv. D.I." refers to the docket of the adversary proceeding below (Adv. Pro. No. 20-50850). "Bankr. D.I." refers to the docket of the lead case in the Debtors' jointly administered cases (the "Chapter 11 Cases") under chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code") (Case No. 20-12522 (JTD)).

Acthar Plaintiffs raise no challenge to the legal standards applied, which is fatal to their request for interlocutory appeal, and they offer no relevant reason why the Order should be viewed as final under applicable law.  The Court should deny the Motion.

## **BACKGROUND**

### I.      **The Debtors' Restructuring Effort**

The Debtors filed their Chapter 11 Cases in significant part to address the overwhelming number of lawsuits commenced against them.  *See* Declaration of Stephen A. Welch, Chief Transformation Officer, in Support of Chapter 11 Petitions and First Day Motions ¶ 11 [Bankr. D.I. 128] (the "Welch Declaration").  Those suits include approximately 2,650 proceedings initiated by governmental units against the Debtors related to the Debtors' production of opioid-based pain medication and more than a dozen material litigations against the Debtors and certain co-defendants related to the Debtors' Acthar® Gel ("Acthar") product.  *See id.* ¶¶ 75-87.

The Debtors worked for over a year prior to filing of the Chapter 11 Cases to craft a restructuring that would, among other things, fairly and equitably resolve all governmental opioid actions, all Acthar-related litigation, and all other outstanding litigation.  As a result, the Debtors commenced their cases with a restructuring support agreement (the "RSA") signed by, among others, 50 Attorneys General of states, Washington, D.C., and U.S. territories with respect to their opioid claims, and the members of the plaintiffs' executive committee representing the interests of over 1000 plaintiffs in the national multidistrict opioid litigation.  Welch Decl. ¶ 15 & Ex. A (RSA).  Subsequent to filing, the Debtors also obtained support for the RSA from an ad hoc group of an additional 1300 municipalities.

The RSA sets forth the terms of a chapter 11 plan, which in turn incorporates a global settlement of all opioid-related claims as well as a settlement of all Acthar-related litigation

2

commenced by federal governmental entities.  *See* Welch Decl Ex. A (RSA), Ex. A (plan term Sheet), Sched. 1 (opioid settlement term sheet), Sched. 2 (federal Acthar settlement term sheet).

## II.     Injunctive Relief Protects the Debtors' Restructuring Effort

Despite having broad support for a well-developed plan, the Debtors did not and do not have the support of all stakeholders.  In order to prevent collateral attacks on the restructuring from non-supporting stakeholders, the Debtors sought two forms of injunctive relief.  Both seek to ensure that the Debtors benefit fully from the automatic stay under section 362 of the Bankruptcy Code.  The automatic stay, which arises automatically upon the filing of a chapter 11 petition, generally prohibits the "commencement or continuation . . . of a judicial, administrative, or other action against a debtor that was or could have been commenced [prior to the petition date]."  11 U.S.C. § 362(a)(1).  The automatic stay "is one of the fundamental debtor protections supplied by the Bankruptcy Code" and provides debtors with a much-needed "breathing spell" to formulate a reorganization plan. *See In re Univ. Med. Ctr.*, 973 F.2d 1065, 1074 (3d Cir. 1992).  However, the automatic stay (a) contains an exception for proceedings by governmental units to enforce their "police and regulatory power," 11 U.S.C. § 362(b)(4) (the "police powers exception"), and (b) generally does not prohibit continuation of litigation against third-party co-defendants.

To address the risk that non-supporting governmental units may contend that their proceedings fall within the police powers exception, the Debtors sought and obtained a temporary injunction of governmental unit actions.  *See* Order Granting the Debtors' Motion for Injunctive Relief Pursuant to 11 U.S.C. § 105 [Adv. D.I. 170] (the "Initial Order").  The Initial Order on its own still leaves the Debtors with one profound risk to the integrity of the stay, namely that non-supporting plaintiffs might seek to continue actions nominally against third-party co-defendants, but with inescapable and material impacts on the Debtors.

3

### III.     The Debtors Seek Injunction of the Covered Acthar Actions

The Acthar Plaintiffs' actions[3] (the "Covered Acthar Actions") present precisely the risk just described of damage to the restructuring through prosecution third-party actions.  The Covered Acthar Actions assert that Debtors Mallinckrodt plc and Mallinckrodt ARD LLC (formerly known as Mallinckrodt ARD Inc.) (together, the "Mallinckrodt Acthar Defendants") conspired with the exclusive distributor of Acthar, Express Scripts, Inc., and certain of its affiliates (collectively the "ESI Defendants") to unlawfully exploit a monopoly in Acthar, principally by substantially increasing the price of the product. *See, e.g.*, Supplemental L&W Decl. Ex. L (*City of Rockford*, Second Amended Class Action Complaint (ECF No. 98)) (the "*Rockford Complaint*").

The claims asserted against the ESI Defendants in the Covered Acthar Actions centrally involve the Debtors. Essentially every allegation made against the ESI Defendants is an allegation that those defendants acted in concert with or at the behest of the Mallinckrodt Acthar Defendants. *See, e.g.*, Supplemental L& W Decl. Ex. L (*Rockford Complaint*) ¶¶ 7-9, 74, 81-84, 94-103, 218-356. The ESI Defendants' defense similarly focuses on the Debtors: The ESI Defendants have stated they will "defend[] themselves in these lawsuits by challenging Plaintiffs' abilities to hold the [ESI Defendants] liable for this *alleged unilateral business conduct* of the Mallinckrodt Defendants." *See id*. Ex. Q, Letter from Express Scripts to Mallinckrodt ARD LLC (Oct. 14, 2020)

---

[3] The Covered Acthar Actions are: (1) *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 3:17-cv-50107 (N.D. Ill.) ("*City of Rockford*"); (2) *MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt ARD, Inc.*, No. 3:20-cv-50056 (N.D. Ill.) ("*MSP*"); (3) *Steamfitters Local Union 420 v. Mallinckrodt ARD, LLC*, No. 2:19-cv-03047 (E.D. Pa.) ("*Steamfitters*"); (4) *Int'l Union of Operating Eng'rs Local 542 v. Mallinckrodt ARD, Inc.*, No. 2018-14059 (Pa. Ct. Com. Pl.) ("*IUOE*"); (5) *Acument Global Techs. v. Mallinckrodt ARD, Inc.*, No. CT-2275-19 (Tenn. Cir. Ct.) ("*Acument*") (collectively, the "Covered Acthar Actions").  The operative complaints for these cases are attached as Exhibits L to P to the *Declaration of M. Viola So in Support of Debtors' Supplemental Motion for Injunctive Relief* (the "Supplemental L&W Declaration") [Adv. D.I. 18].

4

("Indemnity Letter") at 2 (emphasis added); *see also id*. Ex. L (Rockford Complaint) ¶ 243 (quoting ESI Defendants' Chief Medical Officer stating that pricing increases were "a manufacturing decision"). As a result, both the Acthar Plaintiffs and the ESI Defendants would require extensive discovery from the Debtors in order to pursue and defend against the claims nominally brought against ESI.

In addition, the ESI Defendants assert that the Mallinckrodt Acthar Defendants owe them contractual indemnity for the claims asserted against the ESI Defendants in the Covered Acthar Actions, under three separate indemnity agreements.[4]   *See* Supplemental L&W Decl. Ex. Q, ("Indemnity Letter") at 3-4. As with the ESI Defendants' defenses on the merits, the ESI Defendants' indemnity claims also rely upon establishing the Mallinckrodt Acthar Defendants' misconduct.

Even were the ESI Defendants' indemnity arguments to fail, the ESI Defendants would in all likelihood seek to assert contribution claims against the Mallinckrodt Acthar Defendants. The Acthar Plaintiffs assert that the Mallinckrodt Acthar Defendants and the ESI Defendants are jointly and severally liable for all of the unspecified statutory, multiple, and punitive damages asserted. *See* Transcript of Telephonic Hearing Re: First-Day Motions [Bankr. D.I 250] at 46:22-24 (Acthar

---

[4] The ESI Defendants' Indemnity Letter references: (1) a June 27, 2007, "Exclusive Distribution Agreement" between Questcor Pharmaceuticals, Inc. (predecessor of Mallinckrodt ARD Inc.) and ESI Defendant CuraScript SD allegedly providing that Questcor will indemnify CuraScript for any "Claims incurred . . . as a result of Company's manufacturing of the Products, negligent acts, negligent omissions, [or] willful misconduct . . . ."; (2) an April 1, 2018, "Specialty Pharmacy Agreement" between ARD and ESI Defendant Accredo Health Group Inc. allegedly providing that ARD will indemnify Accredo "from and against all losses . . . solely to the extent arising from . . . the negligent act, or willful misconduct of Manufacturer in its activities . . . ."; and (3) an October 1, 2014, "PAP Work Order" between Questcor  and ESI Defendant United BioSource Corp. allegedly providing that Questcor will indemnify United BioSource "from all losses . . . arising from the Patient Assistance Program" referenced in the Covered Acthar Actions.

Plaintiffs' counsel stating "[ESI Defendants are] jointly and severally liable with Mallinckrodt under our claims.").[5]

Managing and participating in the Covered Acthar Actions already has, and would continue, to require substantial attention from the Debtors' key officers and executives. Indeed, in the opening days of the Debtors' cases, the Acthar Plaintiffs agitated for the right to depose the Debtors' Chief Executive Officer and Chief Commercial Officer, causing the Debtors to file and argue for emergency relief before the Acthar Plaintiffs ultimately withdrew their request. *See Debtors' Motion for Temporary Restraining Order* [Adv. D.I. 19]; *Opening Brief in Support of Debtors Motion for Temporary Restraining Order* [Adv. D.I. 20].

Furthermore, continued prosecution of the highly-publicized Covered Acthar Actions, which assert billions of dollars of potential damages, creates further negative publicity damaging to the Debtors' businesses and harmful to employee retention, and creates risk and uncertainty affecting the continued support of the RSA parties, which in turn threatens the entire restructuring. *See* Ex. A, Transcript of Hearing, *Mallinckrodt Plc v. Connecticut*, Adv. Pro. No. 20-50850 (Bankr. D. Del), Nov. 16, 2020 ("Nov. 16 Hr'g Tr."), at 156:7-160:19 (testimony of Randall Eisenberg, Managing Director, AlixPartners LLP).

Given the foregoing, continuation of the Covered Acthar Actions against the ESI Defendants would have had profound negative impacts on the Debtors and their reorganization, including (1) the cost and distraction of monitoring and participating in the actions, (2) the risks of record taint and collateral estoppel, (3) the fixing of indemnity claims potentially amounting to billions of dollars against the Debtors' estates, (4) damage to the Debtors' businesses, and (5) risk

---

[5] While there is no right of contribution under federal antitrust law, the Acthar Actions assert various state law claims. *See, e.g.*, Supplemental L&W Decl. Ex. L (*Rockford* Complaint), Count VIII.

of loss of the RSA and the viability of the restructuring contemplated thereby. *See generally Corrected Opening Brief in Support of Debtors' Supplemental Motion* [Adv. D.I. 23] (the "Supplemental Brief"); *Debtors' Reply in Further Support of Supplemental Motion* [Adv. D.I. 101]; Ex. A. (Nov. 16 Hr'g Tr.) (examinations of Stephen Welch, Chief Transformation Officer, and Randall Eisenberg).   Accordingly, the Debtors sought the Supplemental 105 Order to temporarily enjoin continuation of the Covered Acthar Actions against the ESI Defendants and a limited number of other critical actions against other third-party defendants.

## IV.    The Bankruptcy Court's Bench Ruling

The affected parties, including the Acthar Plaintiffs, strenuously objected to entry of the Supplemental Order.  The parties were afforded fulsome discovery and depositions in connection with those objections, and the Bankruptcy Court held a lengthy evidentiary hearing on the matter over the course of three days in November.  At the conclusion of that hearing, the Court read into the record its extensive findings of fact and conclusions of law overruling the Acthar Plaintiffs' and other parties' objections and granting the Debtors' Supplemental Motion.  *See Mot*. Ex. B. (Nov. 23 Hr'g Tr.) at 41:13-56:25 (the "Bench Ruling").

The Bench Ruling extends for 15 transcript pages and devotes over ten of those pages to addressing the Acthar Plaintiffs' objection.  With respect to that objection, the Bench Ruling clearly and sequentially addresses (1) the facts demonstrating the Bankruptcy Court's jurisdiction over the Covered Acthar Actions, (2) the facts demonstrating the existence of "unusual circumstances" warranting extension of an injunction to the Covered Acthar Actions, and (3) the facts demonstrating that the traditional preliminary injunction factors favor granting an injunction. *Mot*. Ex. B. (Nov. 23 Hr'g Tr.) at 43:19-55:5.

Regarding jurisdiction, the Bankruptcy Court held that the standard for its "related-to" jurisdiction over a proceeding is whether the proceeding "could conceivably have any effect on

the estate being administered in bankruptcy." *Mot.* Ex. B. (Nov. 23 Hr'g Tr.) 44:19-44:22 (quoting

*Pacor v. Higgins*, 742 F.2d 984, 994 (3d Cir. 1984)).   The Bankruptcy Court concluded that

continuing the Covered Acthar Actions against the ESI Defendants would give rise to each of the

following "adverse impacts":

> (1) *ESI indemnification obligations*:  The Bankruptcy Court held that the risk of successful indemnity assertions based on "the three agreements referred to by ESI" alone was a sufficient present harm, regardless of whether those indemnification claims are ultimately successful, because "prudence dictates that the debtor treat its indemnity obligations as very real and substantial." *Id.* at 46:2-46:20 (citing *In re Amer. Film Techs.*, 175 B.R. 847 (Bankr. D. Del. 1994); *In re Sudbury, Inc.*, 140 B.R. 461, 464 (Bankr. N.D. Oh. 1992).
>
> (2) *Record taint and collateral estoppel*:  The Bankruptcy Court held that "the allegations in the complaint[s] show that the claims against the Debtors and the nondebtors are inextricably intertwined, creating a risk of collateral estoppel and record taint that would require the Debtors to participate in the litigation in order to protect their interests." *Id.* at 47:10-47:15.
>
> (3) *Discovery demands*: The Bankruptcy Court observed that "the Acthar Plaintiffs also admit that they would need to take discovery of Debtors' officers and directors in order to establish their claims . . . and ESI will need to defend itself . . . by pointing to the conduct of the Debtors." *Id.* 47:15-20.

The Bankruptcy Court concluded that "any of these factors could have an adverse impact on the

Debtors' estates sufficient to establish jurisdiction." *Id.* at 47:23-25.  The Bankruptcy Court further

credited the testimony of the Debtors' witnesses who confirmed that continued prosecution of the

Covered Acthar Actions would also adversely impact the Debtors by risking loss of RSA support

and damaging the Debtors' businesses.  *Id.* at 52:15-53:10.

Regarding existence of "unusual circumstances" or "adverse impacts," the Bankruptcy

Court held first that the Debtors were not required to demonstrate existence of "unusual

circumstances" to justify an injunction when they could instead demonstrate adverse impacts on

the Debtors' estates.  Mot. Ex. B. (Nov. 23 Hr'g Tr.) at 48:6-50:1 (citing *McCartney v. Integra

Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1997)).  The Bankruptcy Court further held that,

even so, the Debtors satisfied the "unusual circumstances" test because "there is an identity of interest between the third-party [ESI] defendant[s] and the Debtor[s]" based on "the existence of contractual indemnity claims" and, separately, "the risk of collateral estoppel and record taint" requiring the "debtors to participate in [the ESI] actions to protect their interests." *Id.* at 49:22-50:12.  In so holding, the Bankruptcy Court rejected the Acthar Plaintiffs' assertion that the Mallinckrodt Acthar Defendants' and ESI Defendants' "liability is predicated on different acts." The Bankruptcy Court specifically found that the Acthar Plaintiffs pointed to no independent claims against the ESI Defendants, and that no claim could proceed against the ESI Defendants without giving rise to indemnity assertions that would cause them to "assert the [harm] was caused by the Debtors' actions." *Id.* at 50:13-24.

Regarding the traditional preliminary injunction factors, the Bankruptcy Court found and concluded as follows:

(1) *Likelihood of success on the merits*:  The Bankruptcy Court held that in bankruptcy this factor equates to "likelihood of a successful reorganization," Mot. Ex. B. (Nov. 23 Hr'g Tr.) at 51:9-51:13 (citing *Lane v. Philadelphia Newspapers*, 423 B.R. 98, 106 (E.D. Pa. 2010); *In re W.R. Grace & Co.*, 386 B.R. 17, 33 (D. Del. 2008)), and that at the outset of a reorganization the Debtors need only demonstrate they are "proceeding on track and have met the challenges faced so far," *id.* at 51:14-51:20 (quoting *In re Lyondell Chem. Co.*, 402 B.R. 571, 590 (Bankr. S.D.N.Y. 2009)). The Bankruptcy Court held that the Debtors' RSA, and the level of support for the RSA among "key players" constituted "overwhelming evidence" that the Debtors are "on track" and "have met the challenges presented so far." *Id.* at 52:9-52:13.

(2) *Irreparable harm to the Debtors*:  The Bankruptcy Court found that the Debtors had presented "extensive evidence . . . on the potential harms to the estate if the Acthar litigation goes forward." *Id.* at 52:15-52:17.  The Court referenced the testimony of Stephen Welch and Randall Eisenberg, which evidenced "the burdensome and distracting discovery that would occur if these actions proceed, the potential indemnity claims against the Debtors, the significant cost the Debtors would incur in participating in discovery, and the potential significant adverse effects on the restructuring process," including potential loss of RSA-party support.  *Id.* at 52:18-53:1.  The court further specifically credited the witnesses' testimony that prosecution of the Acthar Actions would "create significant distraction for senior management, not just in the discovery process, but also in spending time attempting

9

to reassure customers." *Id.* at 53:2-52:5.  The Bankruptcy Court found this evidence "more than sufficient to meet the burden of showing . . . irreparable harm." *Id.* at 53:7-9.

(3) *Harm to the Acthar Plaintiffs*:  The Bankruptcy Court considered the Acthar Plaintiffs' argument that enjoining the Acthar Actions would "bless the antitrust and RICO conduct of the Debtors on its watch." *Id.* at 53:20-53:22.  The Bankruptcy Court noted that it was making no findings on the plaintiffs' claims, and that those are "issues for another day." *Id.* at 53:22-54:1.

(4) *Public interest*:  The Bankruptcy Court held that in the bankruptcy context this factor means "the promoting of a successful reorganization." *Id.* at 54:11-54:14 (citing *In re Amer. Film Techs.*, 175 B.R. at 849).  The Bankruptcy Court referenced "reasons . . . already articulated" and the progress the Debtors had made to date and concluded that "imposing an injunction to stay the Acthar claims for 270 days certainly promotes a successful reorganization." *Id.* at 54:16-21.  The Court again considered, and again rejected, the Acthar Plaintiffs' argument that by imposing the stay the Bankruptcy Court was "prevent[ing] action to root out corporate misconduct occurring on its watch." *Id.* at 54:21-55:5.  The Bankruptcy Court opined that "[t]he stay being imposed is temporal in scope.  It is not a permanent injunction that will prevent the Acthar plaintiffs from pursuing their claims.  They will have that opportunity when the time comes." *Id.*

Based on the foregoing factual findings and conclusions of law, and having considered at length the Acthar Plaintiffs' arguments, the Bankruptcy Court overruled their objection and granted the Debtors' Supplemental Motion.  As proposed, and as ultimately entered, the Supplemental Order enjoins continuation of the covered actions, including the Covered Acthar Actions for 270 days, although "[a]ny party subject to th[e] Order . . . may seek relief from any provision of th[e] Order for cause shown." *Id.* ¶¶ 1, 7.

## ARGUMENT

## I.  The Acthar Plaintiffs Have No Appeal as of Right:  The Supplemental 105 Order is Not a Final Order

The Acthar Plaintiffs assert that the Supplemental 105 Order is "effectively final as to the Acthar Plaintiffs" and therefore the Acthar Plaintiffs are entitled to appeal as a matter of right. *Mot*. at 9.

Federal district courts "have jurisdiction to hear appeals" "from final judgments, orders, and decrees" of bankruptcy courts.  28 U.S.C. § 158(a).  The Supplemental 105 Order is not final

10

even under the pragmatic finality standard applied to bankruptcy orders.  While "in bankruptcy matters [courts should] consider finality in a more pragmatic and less technical sense than in other matters," this "less stringent  definition of finality in bankruptcy cases is not without limitation." *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987).  The purpose of the pragmatic approach is to allow appeal of "discrete issues" the delayed resolution of which creates the "possibility of wasting several years of bankruptcy proceedings."  *In re Brown*, 803 F.2d 120, 122 (3d Cir. 1986).  Accordingly, "[w]here the issue is likely to affect the distribution of the debtor's assets, or the relationship among creditors, the most pragmatic response will usually be to hear the appeal immediately." *Id.*  Conversely, where the "bankruptcy court's decision on the issue will not impact upon the distribution of the debtor's assets" or "present the threat of a later appeal undoing years of bankruptcy proceedings," the order is not final even under the pragmatic approach.  *Id.* at 123.

Over time, courts have articulated various factors to consider, including "among other things, (1) whether the order leaves additional work to be done by the Bankruptcy Court, (2) whether the order implicates purely legal issues, (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate, (4) the necessity for further fact-finding on remand to the Bankruptcy Court, (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy." *In re F-Squared Inv. Mgmt. LLC*, 2019 WL 1417464, at *3 (D. Del. Mar. 29, 2019) (quotations omitted).[6]

---

[6] Some courts have suggested that bankruptcy court injunctive orders can be appealed as of right, because district court injunctive orders are appealable as of right to courts of appeals under 28 U.S.C. § 1292(a).  *See, e.g.*, *In re Reliance Acceptance Grp., Inc.*, 235 B.R. 548, 553 (D. Del. 1999).  This position incorrectly imports § 1292(a) into the bankruptcy context, despite the fact that § 1292(a) speaks only to the jurisdiction of "the courts of appeals" over district court orders and despite the existence of a separate statute—28 U.S.C. § 158—that governs appeals to district courts from bankruptcy court orders.  "[S]ection 1292(a), by its terms, applies only to interlocutory orders." *In re Comer*, 716 F.2d 168, 173 (3d Cir. 1983).  While § 1292(a) allows appeal as of right of certain enumerated interlocutory orders including injunctions, § 158 does not.  Instead, § 158

11

**A. The Supplemental 105 Order Does Not Affect the Distribution of the Assets of the Estate or the Relationship Among Creditors**

Notwithstanding the panoply of relevant factors, "the impact upon the assets of the estate is the 'most important' factor in this balancing scheme." *Id.* (quoting *In re Market Square Inn, Inc.*, 978 F.2d 116, 120 (3d Cir. 1992). In fact, this factor is dispositive: "[W]here [an] order does not affect the distribution of the debtor's assets or the relationship among the creditors," it is not final. *Brown*, 803 F.2d at 123; *Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 98 (3d Cir. 1988) (same).

The Acthar Plaintiffs argue that there will be no impact if the Supplemental 105 Order is reversed. *Mot.* at 19. That argument misunderstands this factor: The question is not whether *reversal* would impact the estates. The question is whether the order itself decides an issue that has a substantive impact on the distribution of the debtors' assets or the relationship among creditors—such that later reversal would lay waste to the bankruptcy proceedings premised on the bankruptcy court's initial ruling. *See Meyertech*, 831 F.2d at 414; *Brown*, 803 F.2d at 122-23; *Century Glove*, 860 F.2d at 98.

---

permits district courts to decide whether to grant "leave of the court" to hear appeals "from . . . interlocutory orders and decrees" of bankruptcy courts. 28 U.S.C. § 158(a). As this Court recently held, "[t]he plain language of [§ 158] 'persuasively suggest[s] that all interlocutory orders, including injunctions, may only be appealed with leave of court.'" *In re THG Holdings LLC*, No. 19-11689 (JTD), 2020 WL 1493622, at *4 (D. Del. Mar. 27, 2020) (quoting *In re Alcor Energy, LLC*, No. AP 19-50097 (CSS), 2019 WL 6716420, at *4 (D. Del. Dec. 10, 2019)); *see also* 16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3926.1 ("There is no provision for appeal as of right from an injunction order of a bankruptcy judge to the district court[.]"); *Bailey v. Connolly*, 361 F. App'x 942, 950 n.10 (10th Cir. 2010) ("Notably, § 1292(a)(1) does not encompass appeals as of right from such interlocutory orders when issued by bankruptcy judges, and there is no parallel provision in 28 U.S.C. § 158."); *In re Rood*, 426 B.R. 538, 548 (D. Md. 2010) (same); *In re Woodside Grp., LLC*, No. CV 10-273-VBF, 2010 WL 11596159, at *2 (C.D. Cal. June 18, 2010) ("Although 28 U.S.C. § 1292(a)(1) may influence this Court's exercise of discretion, 28 U.S.C. § 1292(a)(1) does not bind the Court here because it does not control the appealability of a bankruptcy court order to a district court."). Notably, the Acthar Plaintiffs do not argue otherwise here.

Here, the Supplemental 105 Order does not decide any substantive issue affecting the distribution of the Debtors' assets or the relationship among creditors.  As relevant, the Order temporarily enjoins proceedings between the Acthar Plaintiffs and the ESI Defendants, and nothing more.  To be sure, the purpose of the injunction is to prevent the negative impacts on the reorganization that will arise if the Covered Acthar Actions go forward now—namely the substantial costs, burdens, and process risks to the Debtors that will ensue—but those negative impacts are not impacts relevant to the finality analysis.  They do not affect distributions (other than by depleting estate assets to the detriment of all) or the relationship among creditors; and there is no risk that if the injunction is later reversed on appeal any portion of the bankruptcy proceedings to that point will be undone.  In the absence of impact on distributions or creditor relationships, there is no relevant impact, and the Order is not final even under a "pragmatic analysis."  *See Brown*, 803 F.2d at 123; *see also Meyertech*, 831 F.2d at 414; *Century Glove*, 860 F.2d at 98.

### B. All Other Relevant Factors also Demonstrate that the Supplemental 105 Order is Not Final

The remaining factors, though immaterial in the absence of a relevant impact on the Debtors' estates, also demonstrate the Supplemental 105 Order is not final.

### 1. Remaining Work to be Done by Bankruptcy Court

The Order leaves meaningful work to be done by the Bankruptcy Court.  The Order is facially a *temporary* injunction:  It extends for 270 days, after which the Debtors must seek to extend it.  Order ¶ 1.  In its Bench Ruling, the Bankruptcy Court specifically noted that the injunction is "temporal in scope" and "not a permanent injunction."  *Mot.* Ex. B. (Nov. 23 Hr'g Tr.) at 54:21-55:5.  The Order also can be modified for cause upon application by an enjoined party.  *Id*. ¶ 7 ("Any party subject to this Order . . . may seek relief from any of the provisions of this Order . . . for cause shown.")  Where the possibility for relief from an injunctive order exists

at the Bankruptcy Court, the order is not final.  *See In re Quigley Co., Inc.*, 323 B.R. 70, 75-76 (S.D.N.Y. 2005).  Even the Acthar Plaintiffs recognize that they can apply for relief to the Bankruptcy Court "if circumstances change." *Mot.* at 11.

The Acthar Plaintiffs  instead argue that because "the Court did not follow Rule 52 . . . they have no way to attack the injunction because they have no notice of its factual basis." *Id.*  This statement is flatly wrong.  Federal Rule of Civil Procedure 52, made applicable through Federal Rule of Bankruptcy Procedures 7052, provides in relevant part that:

> (1) In General.  In any action tried without a jury, the court must find the facts specifically and state its conclusions of law separately.  *The findings and conclusions may be stated on the record after the close of the evidence* or may appear in an opinion or memorandum of decision filed by the court . . . [and]

> (2) For an Interlocutory Injunction.  In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action.

FRBP 7052 (incorporating FRCP 52(a)) (emphasis added).

Here, the Bankruptcy Court stated the facts and law supporting the temporary injunction at length on the record after the close of evidence.  As noted, the Bench Ruling as to the Acthar Plaintiffs' objection alone runs for ten transcript pages and includes detailed findings of fact and conclusions of law on all relevant issues.  Mot. Ex. B. (Nov. 23 Hr'g Tr.) at 43:19-55:5.  Those findings include recitation of the unusual circumstances warranting the injunction—namely the identity of interest between the Debtors and the ESI Defendants given both (a) that the claims against both sets of defendants are "inextricably intertwined," and (b) the ESI Defendants' assertion of indemnity claims against the Mallinckrodt Acthar Defendants for any liability in the Covered Acthar Actions.  *See Mot*. Ex. B. (Nov. 23 Hr'g Tr.) at 48:6-50:24.  The findings further recite all of the evidence demonstrating that the preliminary injunction factors favor the injunction,

including multiple irreparable harms facing the Debtors, such as "burdensome and distracting discovery," "the potential indemnity claims against the Debtors," "the significant cost the Debtors would incur in participating in discovery," and "the potential significant adverse effects on the restructuring process." *See id.* at 51:9-55:5. These findings more than satisfy Rule 52. The Acthar Plaintiffs are free to request relief from the Bankruptcy Court if they believe in good faith that the circumstances clearly enumerated in the Bench Ruling cease to obtain.

### 2.    Legal Issues

The Supplemental 105 Order does not "implicate purely legal issues." The Order and the Bench Ruling, which were entered following a lengthy evidentiary hearing, involve the application of unchallenged law to the facts of the case. The five purportedly "legal issues" raised by the Acthar Plaintiffs are either (a) not issues raised by the Order or Bench ruling, (b) fact issues, or (c) both.

*First*, the Acthar Plaintiffs assert that the Bankruptcy Court incorrectly held that *In Re W.R. Grace & Co.*, 386 B.R. 17 (Bk. Del. 2008), supports a conclusion that the "mere possibility" of indemnity claims provides jurisdiction. *Mot.* at 11-12. To the contrary, the Bankruptcy Court held that, until a final determination is made on indemnification, "prudence dictates that the debtor treat its indemnity obligations as very real and substantial." *Mot.* Ex. B. (Nov. 23 Hr'g Tr.) at 46:15-46:20. The Court did not rely on *W.R. Grace* for this proposition; it relied on two cases not challenged by the Acthar Plaintiffs: *In re Amer. Film Techs.*, 175 B.R. 847 (Bankr. D. Del 1994) and *In re Sudbury, Inc.*, 140 B.R. 461, 464 (Bankr. N.D. Oh. 1992). *See id.* Furthermore, the Bankruptcy Court held that there were at least two other independent bases for jurisdiction, neither of which the Acthar Plaintiffs have challenged, rendering the Acthar plaintiffs' myopic focus on indemnification irrelevant. *See Mot.* Ex. B. (Nov. 23 Hr'g Tr.). 47:10-25 (referencing record taint and collateral estoppel, and discovery demands).

15

*Second*, the Acthar Plaintiffs assert the ESI Defendants' indemnity claim is barred because it was not timely asserted. *Mot.* at 12-13. The timeliness of the indemnity assertion is plainly an issue of fact, and one that the Bankruptcy Court recognized is for another day, given that "potential indemnity claims exist." *See id.* at 46:14-15.

*Third*, the Acthar Plaintiffs further assert that the Debtors and the ESI Defendants "are not inextricably linked as a matter of law." *Mot*. at 13-15. The Acthar Plaintiffs advert to a decision in the *Rockford* litigation purportedly holding that the ESI Defendants could be independently liable. *Mot.* at 14. The *Rockford* court actually held the opposite. Specifically, that court addressed an argument that the ESI Defendants could have no liability because there were no allegations of any kind levied against the ESI Defendants. The court concluded *not* that the ESI Defendants had purely independent liability, but that the conspiracy liability of the ESI Defendants could plausibly be inferred even in the context of a complaint focused entirely on the Mallinckrodt ARD Defendants. *See City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 C 50107, 2019 WL 2763181, at *2 (N.D. Ill. May 3, 2019). Moreover, even if the *Rockford* court had held that the ESI Defendants *could* have independent liability, that holding would not in any way "preclu[de]" or "estop[]," *Mot.* at 14, the Bankruptcy Court's conclusion that the actual "claims against the debtors and the nondebtors are inextricably intertwined, creating a risk of collateral estoppel and record taint that would require the debtors to participate in the litigation in order to protect their interests." *Mot*. Ex. B. (Nov. 23 Hr'g Tr.) 47:11-15. There is no conflict between the *Rockford* court's ruling, even as misunderstood by the Acthar Plaintiffs, and the Supplemental 105 Order, and thus no legal issue is presented for the Court's review..

*Fourth*, the Acthar Plaintiffs assert that the Order improperly prevents the ESI Defendants from ever asserting an indemnity claim, because a duty to indemnify does not arise until liability

16

is fixed.  *Mot.* at 15-17.  This issue is not raised by the Order or the Bench Ruling, nor is it an issue

at all.  The Bankruptcy Code has a purposefully expansive definition of "claim," including any

"right to payment, whether nor not such right is reduced to judgment, liquidated, fixed, contingent,

matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."  11 U.S.C. §

101(5).  Thus, even if the ESI Defendants' indemnity claim remains contingent, it can be asserted

in these Chapter 11 Cases, and it can be estimated for purposes of allowance.  11 U.S.C. § 502(c).

*Fifth*, and finally, the Acthar Plaintiffs last assert that the injunction contravenes public

policy because it "prevent[s] action to root out corporate misconduct occurring on [the Bankruptcy

Court's] watch."  *Mot.* 17-19.  The Bankruptcy Court addressed and rejected this argument in its

Bench Ruling.   *Mot.* Ex. B. (Nov. 23 Hr'g Tr.) at 54:21-55:5.  That the Acthar Plaintiffs disagree

with the Bankruptcy Court's conclusion does not create a legal issue.

### 3.      Need for Further Fact-Finding on Remand

Reversal of the Supplemental 105 Order would not have any effect on the need for further

fact-finding on remand.  The purpose of the fact-finding factor is to assess whether, by deciding

the appeal, the appellate court could eliminate the need for further fact-finding below.  *See*

*Meyertech*, 831 F.2d at 414 (elimination of need for further fact-finding supports viewing order as

final).  The fact-finding has already occurred—there was discovery, a lengthy evidentiary hearing,

and a resulting evidentiary record that overwhelmingly supported the Supplemental 105 Order.

Exercising jurisdiction over this appeal will not reduce fact-finding burdens (or affect them in any

way).

### 4.      Preclusive Effects

An appellate decision on the Supplemental 105 Order would not have any beneficial

preclusive effect.  The purpose of this factor is to assess whether, by deciding the appeal, the

appellate court could resolve issues that might later burden the bankruptcy proceedings.  *See, e.g.*,

17

*In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511 (3d Cir. 2005) (favoring finding of finality because "appeal would require [court] to address a discrete question of law that would have a preclusive effect on certain provisions of the [debtors' plan of reorganization]").  The Acthar Plaintiffs admit that "the issue in this appeal is narrow and should not have preclusive effect." *Mot.* at 20.

### 5. Judicial Economy

Given the absence of any elimination of fact-finding burdens, preclusion of issues that may later become relevant to the Chapter 11 Cases, or any other conceivable reduction in the burdens on the Bankruptcy Court, asserting jurisdiction over the present appeal would not benefit judicial economy.

\* \* \*

In sum, in the absence of any impact on distribution of estate assets or the relationship among creditors, the Supplemental 105 Order is not final under the "pragmatic" approach, and consideration of the other five enumerated factors only confirms this conclusion.  "The Section 105 Injunction . . . is only an *interlocutory stay*."  *Celotex Corp. v. Edwards*, 514 U.S. 300, 310 n.7 (1995).

## II.  Interlocutory Appeal of the Supplemental 105 Order is Not Appropriate.

"[C]ertification of an interlocutory appeal is granted sparingly and only in exceptional circumstances."  *Kaiser Grp. Int'l, Inc. v. Ostrava (In re Kaiser Grp. Int'l, Inc.)*, 400 B.R. 140, 145 (D. Del. 2009).  Because "Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal," "district courts [typically] follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals."  *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 451 B.R. 343, 346 (D. Del. 2011).  Under those standards, "an interlocutory appeal is permitted

18

only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial grounds for a difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation." *Id.*; *see also* 28 U.S.C. § 1292(b). "A court will only grant an interlocutory appeal if all three requirements are met." *In re Kaiser Grp. Int'l*, 400 B.R. at 145 (citing *Trotter v. Perdue Farms, Inc.*, 168 F. Supp. 2d 277, 287 (D. Del. 2001)).

But even if all three requirements are met, interlocutory appeal is appropriate "only when the party seeking leave to appeal 'establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment.'" *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 611 B.R. 532, 538 (D. Del. 2019) (quoting *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989)). And "[l]eave to file an interlocutory appeal may be denied for 'entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue.'" *In re AE Liquidation*, 451 B.R. at 346-47 (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)). All of these factors weigh against permitting an interlocutory appeal here.

### A.  There Is No Controlling Question Of Law

"A controlling question of law is one that (1) 'would be reversible error on final appeal' or (2) is 'serious to the conduct of the litigation, either practically or legally.'" *Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re Essar Steel Minn. LLC)*, 607 B.R. 409, 415 (D. Del. 2019) (quoting *Katz*, 496 F.2d at 755). "An order involves a 'controlling question of law' when it concerns a question of law, as opposed to one of fact or a mixed question of law and fact." *In re Maxus Energy*, 611 B.R. at 540 (quoting *In re AE Liquidation*, 451 B.R. at 347-48).

19

The Acthar Plaintiffs identify no controlling question of law that the Bankruptcy Court misapprehended.  There is no challenge to the legal standard for related-to jurisdiction, no challenge to the legal standards applicable to granting preliminary injunctions, and no challenge to the Bankruptcy Court's understanding of the preliminary injunction factors in the bankruptcy context.  Instead, the Acthar Plaintiffs assert that the Bankruptcy Court (a) failed to make conclusions of law, and (b) failed to set forth its factual findings rather than summarily relying on the Debtors' pleadings.  *Mot.* at 22-24.  These assertions are both false, *see infra* Part I.b.1. (discussing Rule 52 findings and conclusions), and irrelevant to the question whether the Supplemental 105 Order raises a controlling question of law subject to reversal.  To the extent the Acthar Plaintiffs identify any controlling legal standards, they cite the same standards, and the same cases, relied upon by the Bankruptcy Court.  *See, e.g.*, *Mot.* at 23 (stating same "unusual circumstances" standard described by Bankruptcy Court, and same cases relied upon).  The application of these standards also does not raise a legal question.  *In re Maxus Energy*, 611 B.R. at 540 (questions of fact and mixed questions of fact and law do not raise controlling questions of law).  The Acthar Plaintiffs simply raise no question of law (controlling or otherwise).

### B.  There are No Substantial Grounds for Difference of Opinion on any Controlling Question of Law

Having failed to identify any controlling question of law, the Acthar Plaintiffs do not attempt to describe any grounds for a difference of opinion on any such question.  Instead, the Acthar Plaintiffs repeat their misguided assertion that "it is impossible to tell what legal standard was applied in view of the failure of the Bankruptcy Court to make findings of fact and conclusions of law." *Mot.* at 23.  This assertion remains false.  *See infra*, Part I.b.1.

20

### C.  An Immediate Appeal Will Not Materially Advance Termination of Litigation

"An interlocutory appeal should not be granted if it 'will not advance the overall progress of the [adversary] action, which consists of [additional] claims' unaffected by the appeal."  *In re Essar Steel Minn.*, 607 B.R. at 418 (quoting *Halperin v. Moreno (In re Greenfield Energy)*, No. 15-50262, 2017 WL 6524525, at *6 (D. Del. Dec. 21, 2017)).  Denial of a motion for leave to appeal is appropriate if "an immediate appeal of one or all of the[] issues 'would only promote piecemeal determination of the questions raised in the adversary action and would likely create unnecessary delay.'"  *Id.* (quoting *In re AE Liquidation*, 451 B.R. at 348).

The Acthar Plaintiffs do not argue that immediate appeal would advance termination of the *adversary proceeding* in which the injunction arises.  Instead, the Acthar Plaintiffs argue that immediate appeal will advance the termination of their own lawsuits against the ESI Defendants, which would in turn "simplify the trial against Debtors."  *See Mot.* at 24.  This is irrelevant, as the issue is whether an appeal will simplify the adversary proceeding.  *See, e.g.*, *Essar Steel Minn.*, 607 B.R. at 418 (discussing termination of adversary proceeding giving rise to appeal).  In fact, immediate appeal could only complicate the adversary proceeding.  In case of reversal, the Debtors would almost certainly renew their request for an injunction (assuming it is reasonably possible to address any concerns raised by this Court), which would prolong rather than advance the termination of the underlying adversary proceeding.  Moreover, the Acthar Plaintiffs are also wrong about the underlying merits litigation—the claims would not be "simplified," they just would no longer be stayed *if* the Acthar Plaintiffs succeeded on appeal.  The merits of the underlying claims will remain the same, and indeed may be greatly complicated if the Covered Acthar Actions are permitted to go forward in a variety of jurisdictions now rather than waiting for the clarity that the bankruptcy process may provide.

RLF1 24563192v.1

The Acthar Plaintiffs' argument that appeal "would remove the red herring of the purported indemnity issue" and would correspondingly "remove a potential basis for appeal . . . in that the injunction currently prevents Express Scripts' indemnity claim from ever being heard," *Mot.* at 24, is wrong for at least three reasons.  First, as noted above, the injunction is not an impediment to the Bankruptcy Court's addressing the ESI Defendants' indemnity claim in the bankruptcy proceedings.  *See infra*, Part II.b.2.  Second, appeal also would not resolve the validity of the indemnity claim, because the Bankruptcy Court's ruling relies not on the ultimate validity of the claim, but on its colorable assertion.  *See* Mot. Ex. B. (Nov. 23 Hr'g Tr.) 46:10-46:20.  Third, every aspect of the Bankruptcy Court's holding is premised on several grounds independent from the existence of the indemnity claim. *See id.* at 47:10-47:25 (jurisdiction also established by record taint and collateral estoppel risks requiring Debtors' participation in Covered Acthar Actions, and by discovery burdens), 49:22-50:12 (unusual circumstances not required but also satisfied by same record taint and collateral estoppel risks requiring participation in litigation), 52:18-53:1 (irreparable harms include burden and distraction of discovery demands and harm to reorganization process).  Accordingly, an appeal would not advance resolution of the indemnification claim, much less impact the Supplemental 105 Order or terminate the adversary proceeding.

### D.  There Are No Exceptional Circumstances

"Because an interlocutory appeal represents a deviation from the basic judicial policy of deferring review until after the entry of final judgment, the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist." *In re Essar Steel Minn.*, 607 B.R. at 418 (citing *Simon & Schuster, Inc. v. Advanced Mktg. Servs., Inc. (In re Advanced Mktg. Servs., Inc.)*, No. 07-28-JJF, 2008 WL 5680878 (D. Del. Apr. 3, 2008)).  "[A] party seeking leave to pursue an interlocutory appeal must demonstrate, in the context of the factors

cited above, some circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review." *Bowie Produce Co. v. Magic Am. Café, Inc. (In re Magic Rests., Inc.)*, 202 B.R. 24, 26-27 (D. Del. 1996).

The Acthar Plaintiffs ignore this additional requirement and make no mention of it.  Quite simply, the Acthar Plaintiffs "ha[ve] not sufficiently established an urgency that sets this case apart from the typical case."  *In re Magic Rests.*, 202 B.R. at 26.  The Acthar Plaintiffs have not (and cannot) satisfy their burden to demonstrate any extraordinary circumstances that would warrant an interlocutory appeal.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Debtors respectfully submit that the Court should deny the Acthar Plaintiffs' Motion.

23

Dated: January 4, 2021

*/s/ Robert J. Stearn, Jr.*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Robert C. Maddox (No. 5356)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                stearn@rlf.com
                merchant@rlf.com
                steele@rlf.com
                maddox@rlf.com
                schlauch@rlf.com

**LATHAM & WATKINS LLP**
George A. Davis (*pro hac vice*)
Christopher Harris (*pro hac vice*)
George Klidonas (*pro hac vice*)
Andrew Sorkin (*pro hac vice*)
Anupama Yerramalli (*pro hac vice*)
Hugh Murtagh (*pro hac vice*)
885 Third Avenue
New York, New York 10022
Telephone:      (212) 906-1200
Facsimile:      (212) 751-4864
Email:          george.davis@lw.com
                christopher.harris@lw.com
                george.klidonas@lw.com
                andrew.sorkin@lw.com
                anu.yerramalli@lw.com
                hugh.murtagh@lw.com

- and -

Jeffrey E. Bjork (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:      (213) 485-1234
Facsimile:      (213) 891-8763
Email:          jeff.bjork@lw.com

- and -

Elizabeth Marks (*pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Telephone:      (617) 948-6000
Facsimile:      (617) 948-6001
Email:          betsy.marks@lw.com

- and -

Jason B. Gott (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:      (312) 876-7700
Facsimile:      (312) 993-9767
Email:          jason.gott@lw.com

*Counsel for the Debtors and Debtors in Possession*