IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re MALLINCKRODT PLC, *et al.*, | : | Chapter 11 |
| | : | Bankr. Case No. 20-12522-JTD |
| Debtors. | : | (Jointly Administered) |
| | : | |
| MALLINCKRODT PLC, *et al.*, | : | Adv. No. 20-50850-JTD |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, *et al.*, | : | |
| | : | Misc. No. 20-408-LPS |
| Defendants. | : | |

## <u>MEMORANDUM ORDER</u>

Having reviewed the papers submitted in connection with the Acthar Plaintiffs'[1] motion

for leave to appeal on an expedited basis (D.I. 1, 2) ("Expedited Motion for Leave") the

Bankruptcy Court's Order Granting the Debtors' Supplemental Motion for Injunctive Relief

Pursuant to 11 U.S.C.§ 105 (Adv. D.I. 180)[2] ("Preliminary Injunction Order") entered on

December 4, 2020, for the reasons set forth on the record at the November 23, 2020 hearing

(Adv. D.I. 186, 11/23/20 Hr'g Tr. at 41-56) ("Bench Ruling"); and having reviewed the

opposition (D.I. 3) filed by Mallinckrodt plc and its affiliated debtors in possession ("Debtors");

---

[1] The "Acthar Plaintiffs" consist of the following: the City of Rockford ("Rockford"), Steamfitters Local Union No. 420 ("Steamfitters Local 420"), the International Union of Operating Engineers Local 542 ("IUOE Local 542"), United Association of Plumbers & Pipefitters Local 322 of Southern New Jersey ("Plumbers Local 322") and Acument Global Technologies ("Acument"), individually and on behalf of the classes of third-party payors ("TPPs") and their beneficiaries that Rockford, Steamfitters Local 420, and Plumbers Local 322 seek to represent in their respective cases currently pending in federal district courts in the Northern District of Illinois, the Eastern District of Pennsylvania, and the District of New Jersey, respectively.

[2] The docket of the adversary proceeding, captioned *Mallinckrodt plc v. State of Connecticut, et al.*, Adv. No. 20-50850-JTD (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The docket of the Chapter 11 cases, captioned *In re Mallinckrodt, plc, et al.*, No. 20-12522-JTD (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

IT IS HEREBY ORDERED that the Expedited Motion for Leave is DENIED for the reasons that follow:

1. *Introduction.* The Preliminary Injunction Order enjoins continuation of certain litigation for a period of 270 days and provides that "[a]ny party subject to th[e] Order . . . may seek relief from any provision of th[e] Order for cause shown." (Adv. D.I. 180, ¶¶ 1, 7)  The Acthar Plaintiffs assert that they may appeal as of right from the Preliminary Injunction Order, which should be considered a final order under the Third Circuit's flexible pragmatic approach. (D.I. 1 at 9)  Alternatively, the Acthar Plaintiffs seek leave to pursue an interlocutory appeal of the Preliminary Injunction Order.  As a basis for relief, the Acthar Plaintiffs argue that the Bankruptcy Court failed to make findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.[3]  (*Id.* at 2, 10-11, 23)  They seek to expedite the appeal pursuant to Federal Rule of Bankruptcy Procedure 8013.  (*Id.* at 2)

The Debtors counter that the Acthar Plaintiffs have no appeal as of right because the Preliminary Injunction Order is not final.  (D.I. 3 at 1, 10-19)  The Debtors further assert that leave to appeal should be denied because the Acthar Plaintiffs raise no challenge to the legal standards applied and have failed to establish any other factor relevant to whether to permit an interlocutory appeal.  (*Id.* at 19-23)

2. *Background.*  The Debtors filed their Chapter 11 cases in part to address a number of lawsuits against them, including approximately 2,650 proceedings initiated by governmental units, related to the Debtors' production of opioid-based pain medication, and more than a dozen suits against the Debtors and certain co-defendants related to the Debtors' Acthar product. (Bankr. D.I. 128 at ¶ 11)  Prior to filing for bankruptcy, the Debtors entered into a restructuring

---

[3] Federal Rule of Civil Procedure 52 is made applicable to the adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7052.

support agreement (*id.* Ex. A) (the "RSA") signed by, among others, 50 state Attorneys General, Washington, D.C., and U.S. territories with respect to their opioid claims, and the members of the plaintiffs' executive committee representing the interests of over 1,000 plaintiffs in the national multidistrict opioid litigation. (*Id.* at ¶ 15 & Ex. A) The Debtors assert that, subsequent to filing, they also obtained support for the RSA from an ad hoc group of an additional 1,300 municipalities. (D.I. 3 at 2) The RSA sets forth the terms of a chapter 11 plan, which in turn incorporates a global settlement of all opioid-related claims as well as a settlement of all Acthar-related litigation commenced by federal governmental entities. (RSA Ex. A. at Sched. 1 & 2)

The Acthar Plaintiffs are a group of non-supporting litigants pursuing recovery from the Debtors for alleged unlawful conduct in their marketing of Acthar through various actions[4] (referred to collectively herein as the "Covered Acthar Actions"). (D.I. 3 at 4 & n.3) The Covered Acthar Actions assert that certain Debtors (together, the "Mallinckrodt Defendants") conspired with the exclusive distributor of Acthar, Express Scripts, Inc. and certain of its affiliates (collectively the "ESI Defendants"), to unlawfully exploit a monopoly in Acthar, principally by substantially increasing the price of the product. (*See, e.g.,* Adv. D.I. 18 Supplemental L&W Decl. Ex. L (Second Amended Class Action Complaint (the "Rockford Complaint")))

---

[4] The Covered Acthar Actions are: (1) *City of Rockford v. Mallinckrodt ARD, Inc.,* No. 3:17-cv-50107 (N.D. Ill.) ("*City of Rockford*"); (2) *MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt ARD, Inc.,* No. 3:20-cv-50056 (N.D. Ill.) ("*MSP*"); (3) *Steamfitters Local Union 420 v. Mallinckrodt ARD, LLC,* No. 2:19-cv-03047 (E.D. Pa.) ("*Steamfitters*"); (4) *Int'l Union of Operating Eng'rs Local 542 v. Mallinckrodt ARD, Inc.,* No. 2018-14059 (Pa. Ct. Com. Pl.) ("*IUOE*"); (5) *Acument Global Techs. v. Mallinckrodt ARD, Inc.,* No. CT-2275-19 (Tenn. Cir. Ct.) ("*Acument*"). The operative complaints for these cases are attached as Exhibits L to P to the Declaration of M. Viola So in Support of Debtors' Supplemental Motion for Injunctive Relief (the "Supplemental L&W Decl.") (Adv. D.I. 18).

In the Supplemental Motion for Injunctive Relief (Adv. D.I. 16), the Debtors sought an order extending the automatic stay and temporarily enjoining continuation of the Covered Acthar Actions against the ESI Defendants and a limited number of other actions against third-party defendants. (*See* Adv. D.I. 23, 101) The Debtors assert that "[t]he claims asserted against the ESI Defendants in the Covered Acthar Actions centrally involve the Debtors" as "[e]ssentially every allegation made against the ESI Defendants is an allegation that those defendants acted in concert with or at the behest of the Mallinckrodt [] Defendants." (D.I. 3 at 4) (citing *Rockford* Complaint at ¶¶ 7-9, 74, 81-84, 94-103, 218-356) The Debtors further assert that the ESI Defendants' defense similarly focuses on the Debtors: "The ESI Defendants have stated they will 'defend[] themselves in these lawsuits by challenging Plaintiffs' abilities to hold the [ESI Defendants] liable for this ***alleged unilateral business conduct*** of the Mallinckrodt Defendants.'" (*See* Supplemental L&W Decl., Ex. Q, Letter from Express Scripts to Mallinckrodt ARD LLC (Oct. 14, 2020) ("Indemnity Letter") at 2 (emphasis added); *see also Rockford* Complaint at ¶ 243 (quoting ESI Defendants' Chief Medical Officer stating that pricing increases were "a manufacturing decision")) In addition, the Debtors contend, the ESI Defendants have asserted that the Mallinckrodt Defendants owe them contractual indemnity for the claims asserted against the ESI Defendants under three separate indemnity agreements. (*See* Indemnity Letter at 3-4) The ESI Defendants' indemnity claims will rely upon establishing the Mallinckrodt Defendants' misconduct, and the Debtors contend that even if the ESI Defendants' indemnity arguments fail, the ESI Defendants will likely assert contribution claims against the Mallinckrodt Defendants.[5] (D.I. 3 at 5)

---

[5] The Acthar Plaintiffs assert that the Mallinckrodt Defendants and the ESI Defendants are jointly and severally liable for all of the unspecified statutory, multiple, and punitive damages asserted. (*See* Bankr. D.I. 250, 10/14/20 Hr'g Tr. at 46) (Acthar Plaintiffs' counsel stating "[ESI Defendants are] jointly and severally liable with Mallinckrodt under our claims")

4

In support of their request for an order extending the automatic stay to the Covered Acthar Actions, the Debtors argued that both the Acthar Plaintiffs and the ESI Defendants would require extensive discovery from the Debtors in order to pursue and defend against the claims brought against ESI. The Debtors further argued that managing and participating in the Covered Acthar Actions already had, and would continue, to require substantial attention from the Debtors' key officers and executives. The Debtors further argued that continued prosecution of the highly-publicized Covered Acthar Actions, which assert billions of dollars of potential damages, creates further negative publicity damaging to the Debtors' businesses and employee retention, and creates risk and uncertainty which could undermine support of the RSA parties, which in turn threatens the entire restructuring.

The Acthar Defendants and certain other affected parties objected to the Debtors' requested relief. The Acthar Defendants argued, among other things, that the Bankruptcy Court lacked "related to" jurisdiction to enjoin the Covered Acthar Actions because the three agreements underlying ESI's contractual indemnity claims did not establish a credible claim for indemnity. (*See* 11/23/20 Hr'g Tr. at 45-46) (summarizing jurisdictional argument) The parties were afforded discovery and depositions in connection with the objections, and the Bankruptcy Court held an evidentiary hearing on the Supplemental Motion over the course of three days.

At the conclusion of that hearing, the Bankruptcy Court read into the record its findings of fact and conclusions of law, overruling all objections, and granting the Preliminary Injunction Order. (*See* 11/23/20 Hr'g Tr. at 41-56)

With respect to the jurisdictional analysis, the Bankruptcy Court identified the standard for its "related-to" jurisdiction over a proceeding as whether the proceeding "could conceivably have any effect on the estate being administered in bankruptcy." (*Id.* at 44) (quoting *Pacor v. Higgins*, 742 F.2d 984, 994 (3d Cir. 1984)) The Bankruptcy Court concluded that continuing the

5

Covered Acthar Actions against the ESI Defendants would give rise to several "adverse impacts," including: (i) risk to the Debtors of the successful assertion of indemnity obligations, based on "the three indemnity agreements referred to by ESI" (*id.* at 46); (ii) risk to the Debtors of record taint and collateral estoppel (*see id.* at 47) (finding that "the allegations in the complaint[s] show that the claims against the Debtors and the nondebtors are inextricably intertwined, creating a risk of collateral estoppel and record taint that would require the Debtors to participate in the litigation in order to protect their interests"); and (iii) discovery demands upon the Debtors (*id.* at 47) (observing that "the Acthar Plaintiffs also admit that they would need to take discovery of Debtors' officers and directors in order to establish their claims . . . and ESI will need to defend itself . . . by pointing to the conduct of the Debtors"). The Bankruptcy Court concluded that "any of these factors could have an adverse impact on the Debtors' estates sufficient to establish jurisdiction." (*Id.* at 47)

With respect to the preliminary injunction analysis, the Bankruptcy Court rejected the Acthar Plaintiffs' contention that the Debtors were required to establish "unusual circumstances." The Bankruptcy Court pointed to the Third Circuit's decision in *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1997), noting "courts have extended the stay in two circumstances: One, where the debtor shows unusual circumstances, such that there is an identity of interest between the third-party defendant and the debtors; and two, where extending the stay is essential to the debtors' reorganization efforts." (11/23/20 Hr'g Tr. at 49-50) It follows, in the view of the Bankruptcy Court, that the Debtors were not required to demonstrate existence of "unusual circumstances" and could, instead, justify an injunction by demonstrating adverse impacts on the Debtors' estates. (*Id.* at 48-50) In any case, the Bankruptcy Court found that the Debtors had satisfied the "unusual circumstances" test because "there is an identity of interest between the third-party [ESI] defendant[s] and the Debtor[s]"

6

based on "the existence of contractual indemnity claims" and, separately, "the risk of collateral estoppel and record taint" making it necessary for the Debtors "to participate in [the ESI] actions to protect their interests." (*Id.* at 49-50) The Bankruptcy Court concluded that the Acthar Plaintiffs pointed to no independent claims against the ESI Defendants, explaining that no claim could proceed against the ESI Defendants without giving rise to indemnity assertions that would cause the ESI Defendants to "assert the [harm] was caused by the Debtors' actions." (*Id.* at 50)

Regarding merits, the Bankruptcy Court held that the Debtors had established the likelihood of a successful reorganization based on the level of support committed in the RSA by "key players" or creditor constituencies, which constituted "overwhelming evidence" that the Debtors are "on track" and "have met the challenges presented so far." (*Id.* at 52)

Regarding irreparable harm to the Debtors in absence of the injunction, the Bankruptcy Court found that the Debtors had presented "extensive evidence . . . on the potential harms to the estate if the Acthar litigation goes forward," including "the burdensome and distracting discovery that would occur if these actions proceed, the potential indemnity claims against the Debtors, the significant cost the Debtors would incur in participating in discovery, and the potential significant adverse effects on the restructuring process." (*Id.* at 52-53) The Bankruptcy Court further specifically credited the witnesses' testimony that prosecution of the Covered Acthar Actions would "create significant distraction for senior management, not just in the discovery process, but also in spending time attempting to reassure customers." (*Id.* at 53) The Bankruptcy Court found this evidence "more than sufficient to meet the burden of showing . . . irreparable harm." (*Id.* at 53)

Regarding harm to the Acthar Plaintiffs that may result from imposition of an injunction, the Bankruptcy Court rejected the Acthar Plaintiffs' argument that enjoining the Covered Acthar Actions would "bless the antitrust and RICO conduct of the Debtors on its watch." (*Id.* at 53)

7

The Court further noted it was making no findings on any plaintiff's claims, which presented "issues for another day." (*Id.* at 53-54)

Finally, regarding the public interest, the Bankruptcy Court held that, in the bankruptcy context, this factor means "the promoting of a successful reorganization," referenced "reasons . . . already articulated" and the progress the Debtors had made to date, and concluded that "imposing an injunction to stay the Acthar claims for 270 days certainly promotes a successful reorganization." (*Id.* at 54) The Bankruptcy Court was not persuaded by the Acthar Plaintiffs' argument that by imposing the stay the Bankruptcy Court was "prevent[ing] action to root out corporate misconduct occurring on its watch." (*Id.* at 54-55) The Bankruptcy Court noted that "[t]he stay being imposed is temporal in scope. It is not a permanent injunction that will prevent the Acthar plaintiffs from pursuing their claims. They will have that opportunity when the time comes." (*Id.*)

Based on its findings and conclusions, the Bankruptcy Court entered the Preliminary Injunction Order, imposing a 270-day stay of the Covered Acthar Actions, from which any party may seek relief for cause shown. On December 15, 2020, the Acthar Plaintiffs filed their Expedited Motion for Leave. (D.I. 1) The Expedited Motion for Leave is fully briefed. (D.I. 1, 2, 3) The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

**3.** *Jurisdiction.* This Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" and, "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a). The Acthar Plaintiffs argue that the Preliminary Injunction Order is "effectively final as to the Acthar Plaintiffs" and, therefore, the Acthar

8

Plaintiffs are entitled to appeal as a matter of right. (D.I. 1 at 9)  Alternatively, they seek leave to appeal.

### 4. *Analysis.*

### A.    *The Preliminary Injunction Order Is Not Final*

"Because bankruptcy cases involve numerous parties with different claims, the court must consider the practical consequences of delaying resolution of the issue presented." *In re Brown*, 803 F.2d 120, 122 (3d Cir. 1986). "In bankruptcy matters [the Third Circuit has] consistently considered finality in a more pragmatic and less technical sense than in other matters and the concept, for purposes of appellate jurisdiction, should be viewed functionally." *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987). "The impact on the estate is the '[f]irst and most important' factor in considering finality." *Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 97 (3d Cir. 1988) (quoting *Meyertech*, 831 F.2d at 414). "Th[is] factor recognizes that issues central to the progress of the bankruptcy petition, those 'likely to affect the distribution of the debtor's assets, or the relationship among the creditors,' should be resolved quickly." *Id.* at 98 (quoting *Brown*, 803 F.2d at 122). "Delayed review in such central cases threatens to undo the entire petition, possibly 'wasting several years of bankruptcy proceedings.'" *Id.* (quoting *Brown*, 803 F.2d at 122). "On the other hand, where the order does not affect these central interests, so that the pragmatic concerns have less force, this court has applied the traditional finality requirements." *Id.* (internal quotation marks omitted); *see also Brown*, 803 F.2d at 123 ("[W]here a district court's order does not affect the distribution of the debtor's assets or the relationship among the creditors, the traditional finality requirements must generally be satisfied before the order is appealable.").

Courts have articulated various factors to consider, including "among other things, (1) whether the order leaves additional work to be done by the Bankruptcy Court, (2) whether the

9

order implicates purely legal issues, (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate, (4) the necessity for further fact-finding on remand to the Bankruptcy Court, (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy." *In re F-Squared Inv. Mgmt. LLC*, 2019 WL 1417464, at \*3 (D. Del. Mar. 29, 2019) (internal quotation marks omitted).

The Court agrees with the Debtors that the Preliminary Injunction Order does not decide any substantive issue affecting the distribution of the Debtors' assets or the relationship among creditors. The Preliminary Injunction Order does nothing more than temporarily enjoin proceedings between the Acthar Plaintiffs and the ESI Defendants. While the purpose of the injunction is to prevent the negative impacts on the reorganization that will arise if the Covered Acthar Actions proceed now – including the costs, burdens, and risks to the Debtors' reorganization efforts identified by the Bankruptcy Court – those negative impacts are not relevant to the finality analysis. The negative impacts would not affect distributions (other than by depleting estate assets to the detriment of all) or the relationship among creditors. Moreover, there is no risk, if the injunction is later reversed on appeal, that any portion of the bankruptcy proceedings to that point will be undone. In the absence of impact on distributions or creditor relationships, there is no relevant impact, and the Preliminary Injunction Order is not final even under a "pragmatic analysis." *See Brown*, 803 F.2d at 123; *see also Meyertech*, 831 F.2d at 414.

Nor does the Preliminary Injunction Order satisfy any other traditional finality requirement, as explained below.

### 1.  *The Order Leaves Additional Work for the Bankruptcy Court*

The Preliminary Injunction Order leaves meaningful work to be done by the Bankruptcy Court, as it is a temporary injunction; after the expiration of 270 days, the Debtors must (if they wish it to continue) seek to extend it. (Adv. D.I. 180 at ¶ 1; *see also* 11/23/20 Hr'g Tr. at 54-55)

10

The Preliminary Injunction Order also may be modified for cause upon application by an enjoined party, and the Acthar Plaintiffs concede (as they must) that they can apply for such relief "if circumstances change." (D.I. 1 at 11; *see also generally In re Quigley Co., Inc.*, 323 B.R. 70, 75-76 (S.D.N.Y. 2005) (possibility for relief from injunctive order supports conclusion that order is not final).

### 2. *The Order Does Not Implicate Purely Legal Issues*

The Acthar Plaintiffs contend that the Preliminary Injunction Order implicates multiple purely legal issues. The Court disagrees.

As the Debtors correctly argue, the Preliminary Injunction Order and Bench Ruling involve the application of unchallenged law to the facts of the case. Contrary to the Acthar Plaintiffs' contention, the Bankruptcy Court did not misapply *In re W.R. Grace & Co.*, 386 B.R. 17 (Bankr. D. Del. 2008) and hold that the "mere possibility" of indemnity claims provides jurisdiction. (D.I. 1 at 11-12) Rather, the Bankruptcy Court ruled (relying on cases other than *W.R. Grace*) that, until a final determination is made on indemnification, "prudence dictates that the debtor treat its indemnity obligations as very real and substantial." (11/23/20 Hr'g Tr. at 46) (citing *In re Amer. Film Techs.*, 175 B.R. 847 (Bankr. D. Del 1994); *In re Sudbury, Inc.*, 140 B.R. 461, 464 (Bankr. N.D. Oh. 1992)) This is not a "purely legal" determination.

The Acthar Plaintiffs further assert that the ESI Defendants' indemnity claim is barred because it was not timely asserted. (D.I. 1 at 12-13) The timeliness of the indemnity assertion is an issue of fact. (*See id.* at 46)

Next, the Acthar Plaintiffs assert that the Debtors and the ESI Defendants "are not inextricably linked as a matter of law." (D.I. 1 at 13-15) The Acthar Plaintiffs point to a decision in the *Rockford* litigation purportedly holding that the ESI Defendants could be independently liable. (*See id.* at 14) Even assuming (without agreeing with the Acthar

11

Plaintiffs) this were correct, a holding by the *Rockford* Court that the ESI Defendants could have independent liability would not "preclu[de]" or "estop[]" (D.I. 1 at 14) the Bankruptcy Court's conclusion that the actual "claims against the debtors and the nondebtors are inextricably intertwined, creating a risk of collateral estoppel and record taint that would require the debtors to participate in the litigation in order to protect their interests." (11/23/20 Hr'g Tr. at 47) More fundamentally, these are not "purely legal" determinations.

The Acthar Plaintiffs further contend that the Preliminary Injunction Order improperly prevents the ESI Defendants from ever asserting an indemnity claim, because a duty to indemnify does not arise until liability is fixed. (D.I. 1 at 15-17) Even assuming this is a "purely legal" issue, however, it is not one raised by the Order or the Bench Ruling. The Bankruptcy Code contains an expansive definition of "claim," including any "right to payment, whether nor not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5). Thus, even if the ESI Defendants' indemnity claim remains contingent, it can be asserted in these Chapter 11 Cases, and it can be estimated for purposes of allowance. *See* 11 U.S.C. § 502(c).

Finally, the Acthar Plaintiffs assert that the injunction contravenes public policy because it "prevent[s] action to root out corporate misconduct occurring on [the Bankruptcy Court's] watch." (D.I. 1 at 17-19) The Bankruptcy Court addressed and rejected this argument in its Bench Ruling. (11/23/20 Hr'g Tr. at 54-55) That the Acthar Plaintiffs disagree with the Bankruptcy Court's conclusion does not create a legal issue.

### 3. *Review Would Not Eliminate Further Fact-Finding on Remand*

Reversal of the Preliminary Injunction Order would not have any effect on the need for further fact-finding on remand, as the necessary fact-finding has already occurred – there was discovery, a lengthy evidentiary hearing, and a resulting evidentiary record that supported the

12

Preliminary Injunction Order. *See generally Meyertech*, 831 F.2d at 414 (noting that elimination of need for further fact-finding supports view that order being reviewed is final).

### 4. *The Order Has No Preclusive Effect on the Merits*

Another factor that may support a finding that an order is final is where appellate review of that order would "address a discrete question of law that would have a preclusive effect on certain provisions of" a debtor's plan of reorganization. *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511 (3d Cir. 2005). This factor is not present here. To the contrary, as the Acthar Plaintiffs have conceded, "the issue in this appeal is narrow and should not have preclusive effect." (D.I. 1 at 20)

The Acthar Plaintiffs add, nonetheless, that because "the Court did not follow Rule 52," they "have no way to attack the injunction because they have no notice of its factual basis." (D.I. 1 at 10-11) They are wrong. Federal Rule of Bankruptcy Procedure 7052 (which incorporates Federal Rule of Civil Procedure 52), expressly provides that "findings and conclusions may be stated on the record after the close of the evidence." The Bankruptcy Court stated the facts and law supporting the temporary injunction at length on the record after the close of evidence. (11/23/20 Hr'g Tr. at 43-55)

### 5. *Review Would Not Further Judicial Economy*

Finally, given the absence of any elimination of fact-finding burdens, preclusion of issues that may later become relevant to the chapter 11 cases, or any other conceivable reduction in the burdens on the Bankruptcy Court, asserting jurisdiction over the present appeal would not benefit judicial economy.

### B.   *Interlocutory Appeal Is Not Warranted*

Section 158(a) does not identify the standard district courts should use in deciding whether to grant an interlocutory appeal. "Typically, however, district courts follow the

standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district

court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).

Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at

issue (1) involves a controlling question of law upon which there is (2) substantial ground for

difference of opinion as to its correctness, and (3) if appealed immediately, may materially

advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte*

*Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). "[C]ertification of an interlocutory appeal is

granted sparingly and only in exceptional circumstances." *Kaiser Grp. Int'l, Inc. v. Ostrava (In*

*re Kaiser Grp. Int'l, Inc.)*, 400 B.R. 140, 145 (D. Del. 2009). In part, this stems from the fact

that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*,

2010 WL 4537921, at \*2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d

524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely

unrelated reasons such as the state of the appellate docket or the desire to have a full record

before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

1.      ***Controlling Question of Law as to Which There Is***
        ***Substantial Ground for Difference of Opinion***

"A controlling question of law must encompass at the very least every order which, if

erroneous, would be reversible error on final appeal." *Katz*, 496 at 755. "'[C]ontrolling' means

serious to the conduct of the litigation, either practically or legally. And on the practical level,

saving of time of the district court and of expense to the litigants [has been] deemed . . . to be a

highly relevant factor." *Id.* (internal citation omitted). The "controlling question of law" also

must be one as to which there is "substantial ground for difference of opinion." 28 U.S.C.

§ 1292(b). "Conflicting and contradictory opinions may provide substantial grounds for a

difference of opinion." *Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re Essar Steel*

14

*Minn. LLC)*, 607 B.R. 409, 416 (D. Del. 2019). "Additionally, the absence of controlling law on

a particular issue can constitute substantial grounds." *Id.* "This factor may also be met when

'the bankruptcy court's decision is contrary to well-established law.'" *Id.* (quoting *In re Marvel*

*Entm't Grp., Inc.*, 209 B.R. 832, 837 (D. Del. 1997)).

The Acthar Plaintiffs contend that this requirement for interlocutory review is met by the

reversible error they identify in the Bankruptcy Court's jurisdictional analysis and its findings on

identity of interest, exceptional circumstances, and the validity of the contested indemnity

provisions. (D.I. 1 at 22)  The Court disagrees.

The Expedited Motion for Leave identifies no challenge to the legal standard for "related

to" jurisdiction; nor does it contain any challenge to the legal standards applicable to granting

preliminary injunctions. The Acthar Plaintiffs rely upon the same controlling legal standards

(and largely the same cases) relied on by the Bankruptcy Court.

The Expedited Motion for Leave also fails to articulate grounds for a difference of

opinion on any question of law.  In trying to do so, the Acthar Plaintiffs argue:

> Announcing its summary legal conclusions, the Court said it found
> irreparable harm because "absent the requested injunction, because
> the commencement or continuation of any Additional Covered
> Action . . . against the Covered Non-Debtors will substantially
> deplete estate resources, will substantially distract key officers and
> employees, and risk collateral estoppel and record taint against the
> Debtors, and will imperil the Debtors' proposed reorganization."
> However, rather than making findings of fact, it simply asserted
> "[t]he legal and factual bases set forth in the Amended Complaint,
> the Supplemental Motion, the Opening Brief, other supporting
> papers, and at the hearing establish just cause for the limited relief
> granted herein." . . . The Court never details what evidence in the
> "supporting papers and at the hearing" establish this purported
> irreparable harm.

(D.I. 1 at 22) (internal citations omitted)  This repetition of the contention that the Bankruptcy

Court failed to set forth its factual findings and conclusions of law fares no better in this context

15

than it did when this Court discussed and rejected it once already. *See supra.* The standards the

Bankruptcy Court applied are clearly set forth in the Bench Ruling, including the jurisdictional

standard (11/23/20 Hr'g Tr. at 44) and the traditional injunction factors (*id.* at 50-51), and those

factors were carefully applied in the Bankruptcy Court's analysis (*see id.* at 41-55).

In sum, the Acthar Plaintiffs' disagreement does not "arise out of genuine doubt as to the

correct legal standard," but rather out of the Bankruptcy Court's application of that standard to

the facts of the Debtors' reorganization and their connection to the pending litigation. Such a

disagreement is not appropriate for interlocutory appeal.

### 2. *Whether Immediate Appeal Will Materially Advance Termination of the Litigation*

"An interlocutory appeal should not be granted if it will not advance the overall progress

of the [adversary] action, which consists of [additional] claims unaffected by the appeal." *In re*

*Essar Steel Minn.*, 607 B.R. 409, 418 (D. Del. 2019) (internal quotation marks omitted). Denial

of a motion for leave to appeal is appropriate if "an immediate appeal of one or all of the[] issues

would only promote piecemeal determination of the questions raised in the adversary action and

would likely create unnecessary delay." *Id.* (internal quotation marks omitted).

The Acthar Plaintiffs do not argue that immediate appeal would advance termination of

the adversary proceeding in which the injunction arises. Rather, the Acthar Plaintiffs argue that

immediate appeal will advance the termination of their own lawsuits against the ESI Defendants,

which would in turn "simplify the trial against Debtors." (D.I. 1 at 24) Even assuming the

Acthar Plaintiffs' speculation is correct, it does not satisfy the criterion this Court must consider

in determining whether to deviate from the norm of providing appellate review only to final

orders. As the Debtors correctly point out, immediate appeal could complicate the adversary

proceeding (*see, e.g.*, D.I. 3 at 21), and it is the impact of an appeal on the adversary proceeding

16

with which this Court must be most concerned in determining whether to permit an interlocutory appeal.[6]

### 3. *Whether Exceptional Circumstances Justify Immediate Appeal*

Even assuming the Acthar Plaintiffs met all of the above requirements, which they have not, interlocutory appeal is appropriate "only when the party seeking leave to appeal 'establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment.'" *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.),* 611 B.R. 532, 538 (D. Del. 2019) (quoting *In re Del. & Hudson Ry. Co.,* 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd,* 884 F.2d 1383 (3d Cir. 1989)).  The Acthar Plaintiffs have not identified any such exceptional circumstances.  They did not even try to do so in their motion (*see* D.I. 1; *see also* D.I. 3 at 22-23) and their efforts to rectify this oversight in their reply fail (*see, e.g.,* D.I. 2 at 15-16), as they are based on contentions the Court has rejected (e.g., that the Bankruptcy Court failed to make specific findings of fact).

**5. *Conclusion.*** The Preliminary Injunction Order is not final under the pragmatic approach, and interlocutory appeal is not appropriate.  Accordingly, for the reasons explained above, the Court will DENY the Expedited Motion for Leave (D.I. 1).  The Clerk is directed to CLOSE Misc. No. 20-408-LPS.

February 11, 2021
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[6] Contrary to the Acthar Plaintiff's suggestion (*see* D.I. 1 at 24-25), the injunction is not an impediment to the Bankruptcy Court's addressing the ESI Defendants' indemnity claim in the bankruptcy proceedings, and immediate appeal would not resolve the validity of the indemnity claim – because the Bankruptcy Court's ruling relies not on the ultimate validity of the claim, but on its colorable assertion.